IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN DOBBINS, | § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:20-cv-620-L |
| FEDERAL RESERVE BANK OF DALLAS, | § § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant Federal Reserve Bank of Dallas has filed a motion to dismiss Plaintiff Kevin Dobbins' amended complaint, *see* Dkt. No. 8, which United States District Judge Sam A. Lindsay has referred to the undersigned United States magistrate judge for hearing, if necessary, and proposed findings and recommendations, *see* Dkt. No. 10. Plaintiff has filed a response, see Dkt. No. 11, and Defendant has filed a reply, *see* Dkt. No. 13.

For the following reasons, the undersigned recommends that Court grant in part and deny in part the motion to dismiss.

**Background**

Plaintiff was employed by Defendant as Senior Manager, End-User Support until his termination on April 3, 2018. *See* Dkt. No. 6 at 2.

After suffering an injury in a car accident in January 2018, Plaintiff went on short-term disability on February 20, 2018. *See id.* at 2-3. Plaintiff was under the care

1

of a physician who estimated that Plaintiff could return to work by May 8, 2018. *See id.* at 3.

On March 26, 2018, Plaintiff informed Defendant that he anticipated returning to work the day after his next physician visit on April 17, 2018. *See id.* Plaintiff emailed Defendant details of his treatment plan and reminded Defendant that he planned to return to work earlier than May 8, 2018 – the doctor's original estimate. *See id.*

Plaintiff was terminated on April 3, 2018, for "uncertainty" surrounding his return to work. *See id.* at 3-4. Plaintiff alleges that he was terminated due to disability discrimination. *See id.* at 4.

Plaintiff dual-filed what he alleges was a Charge of Discrimination with the Texas Workforce Commission ("TWC") and Equal Employment Opportunity Commission ("EEOC") on June 15, 2018. *See id.* at 2.

On September 19, 2019, Plaintiff filed a Charge of Discrimination with the TWC and EEOC. *See* Dkt. No. 8-1.

On November 14, 2019, the EEOC issued a Dismissal and Notice of Rights. *See* Dkt. No. 8-2. The EEOC explained that it closed its file on Plaintiff's charge because "[y]our charge was not timely filed with the EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge." *Id.* It also informed Plaintiff of his right to sue Defendant under the Americans with Disabilities Act ("ADA") within 90 days of his receipt of the dismissal. *See id.*

2

On February 18, 2020, Plaintiff sued Defendant in Texas state court, alleging discrimination in violation of the Texas Commission on Human Rights Act ("TCHRA"). *See* Dkt. No. 1-3. Defendant removed the case to this Court on March 19, 2020. *See* Dkt. No. 1. Plaintiff then filed an Amended Complaint adding a claim for discrimination under the ADA. *See* Dkt. No. 6.

Defendant now seeks dismissal of Plaintiff's Amended Complaint. *See* Dkt. No. 8. Defendant argues that Plaintiff's claim of discrimination under the TCHRA "fails because it arises under a state law that is preempted by the Federal Reserve Act ('FRA')." *See id*. And Defendant argues that the ADA claim is untimely. *See id*. at 2.

## Legal Standards

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face

when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief — including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank*

*of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th

Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). And "[t]here is nothing improper about the district court considering the content of briefing that supports or opposes a motion under Rule 12(b)(6) when deciding such a motion," where, although "[w]hen matters outside the pleadings are presented to the court in connection with a motion under Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties," the United States Court of Appeals for the Fifth Circuit has held "that briefs and oral arguments in connection with the motion ... are not considered matters outside the pleadings for purposes of conversion." *Turnage v. McConnell Techns., Inc.*, 671 F. App'x 307, 309 (5th Cir. 2016) (per curiam) (internal quotation marks and citations omitted).

## Analysis

I. Plaintiff's TCHRA claim should be dismissed because it is preempted by the Federal Reserve Act.

Defendant asserts that Plaintiff's TCHRA claim is preempted by the FRA. The FRA, which governs the activities of federal reserve banks, provides in relevant part:

> A federal reserve bank ... shall have power ... [t]o appoint by its board of directors a president, vice presidents, and such officers and employees as are not otherwise provided for in this chapter, to define their duties, require bonds for them and fix the penalty thereof, *and to dismiss at pleasure such officers or employees.*

6

12 U.S.C. § 341(Fifth) (emphasis added). Defendant argues that the "dismiss at pleasure" language found in the FRA conflicts with the TCHRA's prohibition of discrimination against an employee on the basis of disability.

It is well settled that "state law that conflicts with federal law is 'without effect'" under the doctrine of preemption. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992). The doctrine is founded in the Supremacy Clause of the United States Constitution, which provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. "'Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law.'" *Bldg. & Const. Trades Council of Metro. Dist. v. Assoc. Builders & Contractors of Mass./R.I., Inc.,* 507 U.S. 218, 224 (1993) (quoting *Maryland v. Louisiana,* 451 U.S. 725, 746 (1981)). "Pre-emption fundamentally is a question of congressional intent." *English v. Gen. Elec. Co.,* 496 U.S. 72, 78–79 (1990).

There are three general categories of preemption: 1) express preemption, where "Congress define[s] explicitly the extent to which its enactments preempt state law"; 2) field preemption, where Congress's regulatory scheme is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it" or where an Act of Congress "touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject"; and 3) conflict preemption, where state and federal law directly conflict, making it "impossible for a private party to

comply with both state and federal requirements" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English,* 496 U.S. at 78-79 (citations omitted); *see also CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 663 (1993) ("Where a state statute conflicts with, or frustrates, federal law, the former must give way).

"Federal and state law need not be contradictory on their faces for preemption to apply. It is sufficient that the state law 'impose[s] ... additional conditions' not contemplated by Congress." *Fasano v. Fed. Reserve Bank of New York,* 457 F.3d 274, 283 (3d Cir. 2006) (quoting *Surrick v. Killion,* 449 F.3d 520, 532 (3d Cir. 2006) (quoting *Sperry v. Florida,* 373 U.S. 379, 385 (1963)).

The question of whether the "dismiss at pleasure" provision of the FRA preempts the TCHRA is one of first impression in the Fifth Circuit.

Other circuit and district courts have addressed whether the FRA or analogous federal statutes containing similar "dismiss at pleasure" language preempt state anti-discrimintion laws and have reached varying conclusions. Courts are in agreement that federal reserve banks are subject to federal anti-discrimination laws, but courts differ regarding the extent to which the FRA preempts state anti-discrimination laws.

The FRA's "dismiss at pleasure" language is in conflict with the ADA. Section 341(Fifth) grants Federal Reserve Banks the absolute, unlimited power to dismiss an employee. The ADA and 12 U.S.C. § 1831j, on the other hand, prohibit a Federal

Reserve Bank from dismissing an employee on the ground of a covered disability, from refusing to grant an employee's request for an accommodation, or from dismissing an employee for having filed a complaint alleging a violation of law. Thus, a Federal Reserve Bank's absolute unconditioned legal right to dismiss under Section 341(Fifth) is made illegal under the ADA and 12 U.S.C. § 1831j. *See Fasano*, 457 F.3d at 285.

Concluding that the conflict is irreconcilable, some courts hold that the FRA preempts all state anti-discrimination laws or claims arising out of the employment relationship. For example, in *Ana Leon T. v. Fed. Reserve Bank of Chicago,* the United States Court of Appeals for the Sixth Circuit summarily concluded that the "dismiss at pleasure" language found in the FRA "preempts any state-created employment right to the contrary," including state laws prohibiting employment discrimination. 823 F.2d 928, 931 (6th Cir. 1987); *see also Arrow v. Fed. Reserve Bank of St. Louis,* 358 F.3d 392, 393 (6th Cir. 2004) (following *Ana Leon T.*). In *Diniz v. Fed. Reserve Bank of San Francisco*, the United States District Court for the Northern District of California held that "state law claims arising out of the employment relationship are preempted" by the FRA. 2004 WL 2043127 at *1-*2 (N.D. Cal. Sept. 13, 2004) (citing *Bollow v. Fed. Reserve Bank of San Francisco,* 650 F.2d 1093 (9th Cir.1981)).

In a case construing similar "dismiss at pleasure" language in the Federal Home Loan Bank Act, the United States Court of Appeals for the Fourth Circuit concluded that "Congress intended for federal law to define the discretion which the Bank may exercise in the discharge of employees" and held that "[a]ny state claim for

9

wrongful termination would plainly conflict with the discretion accorded the Bank by Congress." *Andrews v. Fed. Home Loan Bank of Atlanta,* 998 F.2d 214, 220 (4th Cir. 1993). Similarly, the United States Court of Appeals for the Eleventh Circuit held that "the at-pleasure provision of the [National Bank Act] preempts" plaintiff's "claim [ ] for wrongful discharge under Florida law." *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 491 (11th Cir. 2015).

Other courts reconcile the applicability of federal statutes limiting the Federal Reserve Banks' discretion in personnel decisions with Section 341(Fifth)'s grant of broad power to dismiss employees "at pleasure" by concluding the ADA and 12 U.S.C. § 1831j impliedly amended Section 341(Fifth). *See Fasano,* 457 F.3d 274 at 287; *Evans v. Fed. Reserve Bank of Philadelphia*, No. CIV.A 03-4975, 2004 WL 1535772, at *6 (E.D. Pa. July 8, 2004). "[T]o the extent that the ADA and 12 U.S.C. § 1831j irreconcilably conflict with § 341(Fifth), these statutes have impliedly amended § 341(Fifth) to grant a Federal Reserve Bank 'a *limited* power to dismiss any of its officers at pleasure by its board of directors, not extending to dismissal' on grounds prohibited by the ADA or 12 U.S.C. § 1831j." *Fasano,* 457 F.3d at 285 (quoting *Peatros v. Bank of Am.,* 22 Cal. 4th 147, 91 Cal. Rptr. 2d 659, 990 P.2d 539, 549-50 (2000); emphasis in original). "The corollary is that 'as impliedly amended by [the ADA and 12 U.S.C. § 1831j, § 341(Fifth) ] bestows a *qualified* immunity from liability arising from its exercise, allowing only specified relief, with limits and/or bars against compensatory and/or punitive damages.'" *Fasano,* 457 F.3d at 287 (quoting *Peatros,* 91 Cal. Rptr. 2d 659, 990 P.2d at 550; emphasis in original)).

10

Under this more limited approach of partial conflict preemption of state employment laws, courts have concluded that Section 341(Fifth) (and, analogously, provisions in the National Bank Act and National Home Loan Bank Act) preempts state laws only to the extent that the state laws provide additional remedies or liability beyond the federal antidiscrimination laws that have already impliedly amended Section 341 (Fifth). *See id.* at 286-87. This has resulted in courts finding certain state laws to not be preempted because those state laws exactly paralleled federal law. *See, e.g., Kroske v. U.S. Bank Corp.,* 432 F.3d 976, 989 (9th Cir. 2005) ("Congress did not intend for § 24(Fifth) [of the National Bank Act] to preempt the WLAD employment discrimination provisions, *at least insofar as they are consistent* with the prohibited grounds for termination under the ADEA.") (emphasis added); *Moodie v. Fed. Reserve Bank of New York,* 831 F. Supp. 333, 337 (S.D.N.Y. 1993) ("The New York State Human Rights Law, with provisions analogous to Title VII, creates no additional employment rights in conflict with the Bank's status as an employer at will, nor does it place additional constraints on the Bank's exercise of its statutory powers.").

On the other hand, where the state law at issue goes beyond the relevant federal law, courts do not hesitate to find conflict preemption. *See, e.g., Fasano.* 457 F.3d at 290 (New Jersey Conscientious Employee Protection Act and New Jersey Law Against Discrimination preempted because they provide remedies and substantive protections that go far beyond the ADA and 12 U.S.C. § 1831j); *Evans,* 2004 WL 1535772, at*6 (Pennsylvania Human Relations Act preempted because it expanded

11

the rights and remedies available under ADEA or Title VII); *Peatros v. Bank of Am.,* 22 Cal. 4th 147, 91 Cal. Rptr. 2d 659, 990 P.2d 539 (2000) (California Fair Employment and Housing Act preempted to extent it conflicts with Title VII and ADEA).

And at least one court has concluded that there is no conflict between state anti-discrimination laws and the purposes and objectives of the FRA's "dismiss at pleasure" provision. In *Goonan v. Federal Reserve Bank of New York*, the United States District Court of the Southern District of New York concluded that "it is implausible to conclude that the drafters of the FRA could have possessed any sort of 'intent' whatsoever with respect to preemption of state (or federal) anti-discrimination laws, particularly those addressing the rights of people with disabilities." 916 F. Supp. 2d 470, 496 (S.D.N.Y. 2013). The court then held that "the FRA does not preempt state and local anti-discrimination statutes because Congress did not manifest an intent to create a federal scheme whose purposes would be frustrated by the enforcement of those laws." *Id.* at 500.

The undersigned finds persuasive the partial preemption approach followed by the majority of courts addressing preemption under the FRA. The question then becomes whether the TCHRA and the ADA are identical. They are not.

The ADA imposes a condition precedent: receipt of a "notice of right to sue" followed by commencement of an action within the next 90 days. *See Vielma v. Eureka Co.*, 18 F.3d 458, 463 (5th Cir. 2000). In contrast, the TWC's "[f]ailure to issue the notice of a complainant's right to file a civil action does not affect the complainant's

right … to bring a civil action against the respondent." TEX. LAB. CODE § 21.252(d). When no right-to-sue notice is issued, an individual may file a lawsuit on his TCHRA claims any time between the 181st day after the complaint was filed with the TWC and the second anniversary of filing the charge with the TWC. *See* TEX. LAB. CODE §§ 21.208, 21.256. "[I]n the federal system mailing the 'right to sue' letter is mandatory and [ ] receipt of the right to sue letter is generally necessary for filing federal suit," but "complainant does not have to wait for this letter before filing suit" for violations of the TCHRA. *Vielma*, 18 F.3d at 463. Although the two statutes are "similar, but not identical," *see id.*, this condition precedent creates a conflict between the FRA and TCHRA. In circumstances where a plaintiff's federal claims may be time-barred, the plaintiff still has an additional opportunity to pursue a claim under Texas law since a plaintiff has, effectively, a period of 18 months during which he may file a state law claim without receiving a "right to sue" letter. *See id.*

Because these statutes are not the same, and the TCHRA contains substantive provisions not found in the federal law, the TCHRA is preempted by the FRA and cannot form the basis for a wrongful termination claim against a Federal Reserve Bank. And, when state law claims are preempted, the appropriate disposition of those claims is dismissal with prejudice. *See Simmons v. Sabine River Authority La.*, 732 F.3d 469, 473, 478 (5th Cir. 2013).

II.   <u>Plaintiff's ADA claim should not be dismissed as untimely.</u>

Defendant asserts the ADA claim was untimely for two reasons. First, in its opening motion, Defendant asserts that the ADA claim was filed more than 90 days

13

after Plaintiff presumptively received the right-to-sue letter. Second, in its reply, Defendant asserts that documents submitted by Plaintiff in support of his response conclusively establish that Plaintiff did not file suit within 300 days of the adverse employment decision.

The undersigned concludes that Plaintiff adequately plead that he filed suit within 90 days of receipt of the right-to-sue notice and, in determining a motion to dismiss, the Court cannot consider the documents attached to Plaintiff's response to determine the adequacy of the pleadings.

A. <u>Plaintiff adequately plead that he met the 90-day deadline.</u>

Under Title VII and the ADA, a plaintiff must exhaust administrative remedies before pursuing employment discrimination claims in federal court. *See Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 207 (5th Cir. 2015) (citing *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378-79 (5th Cir. 2002)). "'Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue.'" *Id.* at 207-08 (quoting *Taylor*, 296 F.3d at 378-79). A plaintiff must file his civil suit within 90 days of *receipt* of a right-to-sue-letter. *See* 42 U.S.C. § 2000e-5(f)(1) (Title VII claims); *Baldwin Cty. Welcome Ctr. v. Brown,* 466 U.S. 147, 149-50; *see also Dao v. Auchun Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996) (ADA claims).

Receipt of a right-to-sue letter is a condition precedent to suit. *See Carter v. H2R Rest. Holdings, LLC,* No. 3:16-cv-1554-N-BN, 2017 WL 4174805, at *6 (N.D. Tex.

Aug. 1, 2017). And Plaintiff plead that all conditions precedent had been met. *See* Dkt. No. 6 at 5.

> The Fifth Circuit has explained that "[a] general averment that 'all conditions precedent to the institution of this lawsuit have been fulfilled' is quite adequate for pleading purposes." *EEOC v. Klinger Elec. Corp.*, 636 F.2d 104, 106 (5th Cir. 1981) (quoting FED. R. CIV. P. 9(c); also citing *EEOC v. Standard Forge and Axle Co., Inc.*, 496 F.2d 1392, 1393 (5th Cir. 1974)); *accord Breazell v. Permian Trucking & Hot Shot, LLC*, No. 7:15-cv-199-XR, 2017 WL 57877, at *3 (W.D. Tex. Jan. 5, 2007) (citing *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 112 (3d. 2014), for the proposition that "that pleading standards for receipt of a right to sue letter are governed by Rule 9(c)'s standard for conditions precedent Sand are not altered by *Iqbal* and *Twombly*, which interpreted Rule 8(a)").

*Carter*, 2017 WL 4174805, at *9. Plaintiff's allegation is sufficient to satisfy Rule 9(c)'s general pleading requirement.

> B. The Court should not consider the administrative complaint attached to Plaintiff's response to the motion to dismiss to determine the adequacy of the <u>pleadings or the</u> <u>arguments made for the first time in Defendant's reply.</u>

In its reply, Defendant argues for the first time that Plaintiff failed to file suit within 300 days of the adverse employment action. *See* Dkt. No. 13 at 2-7. Plaintiff alleges in his Amended Complaint that he filed a Charge of Discrimination with the TWC and EEOC on June 15, 2018. *See* Dkt. No. 6 at 2. In response to the Motion to Dismiss, Plaintiff submitted the document he filed on June 15, 2018. *See* Dkt. No. 12 at 6-8. The title of the document is "Employment Discrimination Complaint Form." *Id.* at 6. Defendant contends that the complaint is not a charge of discrimination and that it conclusively establishes the ADA claim is untimely.

Defendant also argues that the Court may consider this document attached to Plaintiff's response because it conclusively negates the allegations in his Complaint.

15

A motion to dismiss tests the sufficiency of a complaint. The Court considers the allegations in the complaint itself and may consider documents attached to the complaint or the motion to dismiss. It is a "well-settled rule that when a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations.*" *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (quoting *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 454 (7th Cir.1998) (emphasis in original). Thus, if a plaintiff attaches documents to his complaint and relies on the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claims. *See Goines v. Valley Cmty. Services Bd.,* 822 F.3d 159, 166 (4th Cir. 2016) (citing *Thompson*, 300 F.3d at 753).

But the same does not hold true for documents a plaintiff attaches to a response to a motion to dismiss. When considering a motion to dismiss, the Court cannot conclude that Plaintiff has plead his way out of court on the basis of a document not attached to the complaint or motion to dismiss.

Moreover, arguments raised for the first time in a reply brief are disfavored because the non-moving party does not have a meaningful opportunity to respond. Accordingly, in the motion to dismiss context, the Court should not consider Defendant's arguments stemming from the Employment Discrimination Complaint Form attached to Plaintiff's response.

**Recommendation**

Defendant's Motion to Dismiss [Dkt. No. 8] should be granted in part and denied in part. The Court should grant the motion as to the claim for discrimination under the Texas Commission on Human Rights Act and dismiss the TCHRA claim with prejudice. The court should deny the motion as to the claim for discrimination under the Americans with Disabilities Act.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 29, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE